Slip Op. 10-128

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| JIAXING BROTHER FASTENER CO., LTD., A.K.A. JIAXING BROTHER STANDARD PARTS CO., LTD., IFI & MORGAN LTD., and RMB FASTENERS LTD.,<br><br>   Plaintiffs<br><br>  v.<br><br>UNITED STATES,<br><br>   Defendant,<br><br> and<br><br>VULCAN THREADED PRODUCTS, INC.,<br><br>   Defendant Intervenor. | **Before: Gregory W. Carman, Judge**<br>Court No. 09 00205 |

[*Plaintiffs' motion for Judgment on the Agency Record is GRANTED IN PART and the Department of Commerce's final determination is REMANDED.*]

<u>deKieffer & Horgan</u> (<u>Gregory Stephen Menegaz</u>; <u>James Kevin Horgan</u>) for Plaintiffs.

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director; <u>Patricia M. McCarthy</u>; Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Delisa M. Sanchez</u>; <u>Jane Chang Dempsey</u>); <u>Daniel J. Calhoun</u>, Office of the Chief Counsel for Import Administration, United States Department of Commerce; for Defendant.

<u>Vorys, Sater, Seymour and Pease LLP</u> (<u>Frederick Paul Waite</u>; <u>Kimberly Rae Young</u>) for Defendant Intervenor.

Dated: November 16, 2010

**OPINION & ORDER**

Carman, Judge:  Plaintiffs Jiaxing Brother Fastener Co., Ltd. (also known as Jiaxing

Brother Standard Parts Co., Ltd.) ("Jiaxing Brother"), IFI & Morgan Ltd. ("IFI"), and

RMB Fasteners Ltd. ("RMB") (the three companies will be referred to collectively as the

"Brother Companies" or "Plaintiffs") have brought this case to challenge the

Department of Commerce's ("Commerce" or "the Department") final determination of

sales at less than fair value in <u>Certain Steel Threaded Rod from the People's Republic of

China</u>, 74 Fed. Reg. 8,907 (Feb. 27, 2009) ("<u>Final Determination</u>"), PR[1] 189.  The Brother

Companies have moved for judgment on the agency record pursuant to Rule 56.2 of the

Rules of the United States Court of International Trade ("USCIT").  The United States,

Defendant, and Vulcan Threaded Products, Inc. ("Vulcan"), Defendant Intervenor,

oppose the motion.

At issue here is whether Commerce chose the "best available information," as

required by 19 U.S.C. § 1677b(c)(1),[2] when selecting among the financial statements of

various Indian companies as surrogate sources of data for calculating the normal value

of the subject merchandise, steel threaded rod ("STR") from China.  Of the financial

statements at issue in this case, Commerce rejected those of Deepak Fasteners Ltd.

("Deepak"), Mangal Steel Enterprises, Ltd. ("Mangal"), Visakha Wire Ropes Ltd.

---

[1] The public administrative record is referred to throughout this opinion as "PR."

[2] All citation to the United States Code are to the 2006 edition.

("Visakha"), and Rajratan Global Wire Ltd. ("Rajratan"), but accepted those of Lakshmi

Precision Screws ("Lakshmi") and Sterling Tools Ltd. ("Sterling").

The Court affirms the <u>Final Determination</u> to the extent that Commerce rejected

the financial statements of Deepak, Mangal, and Visakha and accepted the statements of

Lakshmi and Sterling because the Court finds that substantial record evidence supports

these decisions and that they are otherwise in accordance with law.  However, the

Court finds that Commerce based its decision to reject the financial statement of

Rajratan on a mistake as to the nature of that company's products, and that the decision

was therefore not supported by substantial evidence on the record.  Plaintiffs' motion is

therefore granted in part and the <u>Final Determination</u> is remanded to Commerce to

reconsider the appropriateness of using Rajratan's financial statement by analyzing the

comparability of Rajratan's merchandise to the subject merchandise.

## I. Procedural History

Commerce began this investigation after receiving a petition from Vulcan

seeking the imposition of antidumping duties on STR from China.  (<u>Petition from Law</u>

<u>Firm of Vorys Sater to Sec of Commerce</u> (Mar. 5, 2008), PR 2.)  Commerce published its

preliminary determination of sales at less than fair value ("LTFV") on October 8, 2008

(<u>Certain Steel Threaded Rod from the People's Republic of China</u>, 73 Fed. Reg. 58,931

(Oct. 8, 2008), PR 132), and an amended preliminary determination later that month

(Certain Steel Threaded Rod from the People's Republic of China, 73 Fed. Reg. 63,693

(Oct. 27, 2008), PR 146).  After conducting verification and accepting submissions of

factual information and case briefs from interested parties, Commerce analyzed and

made decisions in an Issues and Decision Memorandum regarding all issues raised.

(Memo w/attachment(s) from DAS/IA to AS/IA issues and decision memo for Final Det

of Sales LTFV (Feb. 20, 2009), PR 186 ("IDM").)  Commerce then published the Final

Determination in the Federal Register, incorporating the IDM by reference.  (Final

Determination, 74 Fed. Reg. at 8,907.)

## II. STANDARD OF REVIEW

The Court "shall hold unlawful any determination, finding, or conclusion found

. . . to be unsupported by substantial evidence on the record, or otherwise not in

accordance with law," but otherwise shall uphold Commerce's determination.  19

U.S.C. § 1516a(b)(1)(b)(i); Dorbest Ltd. v. United States, 604 F.3d 1363, 1371 (Fed. Cir.

2010).  Substantial evidence "is more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (internal quotations omitted).

Under this standard, the Court must ensure that Commerce took "into account

contradictory evidence or evidence from which conflicting inferences could be drawn."

See id. at 487.  The reviewing court must also consider "the record as a whole, including

evidence that supports as well as evidence that 'fairly detracts from the substantiality of

the evidence.'" Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374

(Fed. Cir. 2003) (quoting Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir.

1984)).  However, "the possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding from being supported by

substantial evidence," Consolo v. Fed. Maritime Comm'n., 383 U.S. 607, 620 (1966)

(citations omitted), so long as there is a "rational connection between the facts found

and the choice made" in the agency's determination.  See Burlington Truck Lines, Inc. v.

United States, 371 U.S. 156, 168 (1962).  Thus, in the specific context of reviewing

Commerce's decision regarding which information constitutes the "best available

information" under 19 U.S.C. § 1677b(c)(1), "the court's role 'is not to evaluate whether

the information Commerce used was the best available, but rather whether a reasonable

mind could conclude that Commerce chose the best available information.'"  Dorbest

Ltd. v. United States, 30 CIT 1671, 1676, 462 F. Supp. 2d 1262, 1269 (2006), aff'd in part,

vacated in part, and remanded on other grounds, 604 F.3d 1363 (quoting Goldlink

Indus. Co. v. United States, 30 CIT 616, 619, 431 F. Supp. 2d 1323, 1327 (2006)).

### III. DISCUSSION

This case centers on whether Commerce violated the mandate, given by 19 U.S.C.

§ 1677b(c)(1), to choose the "best available information" with its determinations about

which proxy financial statements from Indian surrogate companies to accept and reject

in valuing the factors of production to calculate the normal value of the subject

merchandise.  The parties' contentions regarding the appropriateness of the financial

data from each potential surrogate company are set forth below, along with the Court's

analysis relating to that company.

**A.    Deepak**

Commerce rejected the financial statements of Deepak, an Indian producer of

merchandise identical to the subject merchandise, because Commerce found that

Deepak might have benefitted from countervailable subsidies and had submitted

incomplete financial statements.

**1.    Contentions of the Parties**

Plaintiffs object to Commerce's rejection of Deepak's financial statements on

three grounds.  First, the Brother Companies argue that Commerce mistakenly

interpreted Annexure XIX, item 4(c) of Deepak's financial statement as showing

Deepak's "participation in the DEPB [Duty Entitlement Pass Book Scheme] subsidy."

(Pls.' Rule 56.2 Mem. in Supp. of Mot. for J. Upon the Agency R. ("Pls.' 56.2 Mem.") 10

12 (quoting IDM at 10).)  According to the Brother Companies, Annexure XIX "simply

lists the broad accounting principles applied in preparing the financial statements," and

does not indicate whether DEPB subsidy moneys were actually received by Deepak.

(Id. at 10 11.)  The Brother Companies contend that Deepak's profit and loss statement

in Annexure XV "shows that, while Deepak did receive [DEPB subsidy moneys] in fiscal

year 2006," it did not receive any in fiscal year 2007.  (Id. at 11.)  Defendant, for its part,

acknowledges that Deepak received the DEPB subsidy before the POI, but argues that

Commerce's rejection of Deepak's financial statements was nonetheless proper because

what matters is whether a company received or may have received a countervailable

subsidy at any point, and Deepak's receipt of the DEPB subsidy in 2006 was sufficient to

show its participation in the countervailable subsidy regardless of the year in which the

funds were received.  (Defendant's Response in Opposition to Plaintiff's [sic] Motion for

Judgment Upon the Administrative Record ("Def.'s 56.2 Opp.") 10 12 (citing Omnibus

Trade and Comp. Act of 1988, H.R. REP. NO. 100 576, at 59 (1988) (Conf. Rep.) (stating

that Commerce should "avoid using any prices which it has reason to believe or suspect

may be dumped or subsidized prices") (emphasis added) and Wooden Bedroom

Furniture from the People's Republic of China, 73 Fed. Reg. 49,162 (Aug. 20, 2008), and

accompanying IDM at cmt. 1c).)  Vulcan concurs with the United States, and also asserts

that Deepak's lack of revenue under "License Sale Entitlement" does not necessarily

mean that Deepak received no income related to the DEPB subsidy in 2007, since such

licenses can be sold on the secondary market and the income booked elsewhere in the

financial statement.  (Defendant Intervenor's Response Brief in Opposition to Plaintiff's

[sic] Motion for Judgment Upon the Agency Record ("Def. Int.'s 56.2 Opp.") 6 9.)

Second, Plaintiffs allege that Commerce arbitrarily and capriciously departed from its practice of preferring financial statements from companies producing <u>identical</u> merchandise   even in the face of evidence of subsidies   if the alternative requires the use of financial statements from producers of merely <u>comparable</u> products.  (Pl's 56.2 Mot. at 11 12 (<u>citing Issues and Decision Memorandum for the Final Determination of Carbazole Violet Pigment 23 from the People's Republic of China</u> (Nov. 8, 2004), <u>available at</u> http://ia.ita.doc.gov/frn/summary/prc/E4 3197 1.pdf ("<u>CVB 23 IDM</u>") (last visited Nov. 15, 2010), <u>incorporated into</u> <u>Final Determination of Carbazole Violet Pigment 23 from the People's Republic of China</u>, 69 Fed. Reg. 67,304 (Nov. 17, 2004) <u>and</u> 19 C.F.R. § 351.408(c)(4)).)  According to Plaintiffs, Deepak was the only producer of identical merchandise in the preliminary determination, and Commerce's decision to reject Deepak's financial statement and accept instead that of Sterling (a producer of merely comparable merchandise) was arbitrary and capricious, and "led to a 15 percentage point increase in Brother's dumping margin" in the final determination.  (<u>Id.</u> at 12.)  Commerce rejects the charge that it acted arbitrarily and capriciously here, contending that, by policy, the Department only accepts financial statements bearing evidence of subsidies where there is no alternative, and that Nasco Steel ("Nasco"), Lakshmi, and Sterling   all producers of comparable merchandise   presented viable

alternative financial statements.  (Def.'s 56.2 Opp. at 12.)  Vulcan concurs with the

United States.  (Def. Int.'s 56.2 Opp. at 9 10.)

Third, the Brother Companies argue that Commerce wrongly determined that

Deepak's financial statement was incomplete.  (Pl.'s 56.2 Mot. at 12 14.)  According to

Plaintiffs, Commerce found that "schedules V and XIV" from the "Consolidated Profit

and Loss Account for the Year Ending 31 03 07" were missing, although the documents

(Annexures V and XIV to the balance sheet section of the financial statements) are found

in Document 98 of the Public Record at pages 23 and 25.  (Id. at 12 13.)  While Plaintiffs

admit that the generic name of Deepak's principle product   fasteners   was omitted

from the "Balance Sheet Abstract and Company's General Business Profile page"

summary form (a "standard form under the Indian Companies Act that merely

summarizes on one page the information found elsewhere in the financial statements"),

they note that the financial statements nevertheless indicate that "total sales revenue

related to sales of 'fasteners items'" and that the Director Report indicates "that Deepak

operates in the 'Fasteners Industry.'"  (Id. at 13 14.)  Plaintiffs also point out that

"extensive product information" in the record showed that "Deepak produced steel

threaded rod."  (Id. at 14.)  From this, Plaintiffs argue that Commerce's final

determination, rejecting Deepak's financial statement as incomplete, was not supported

by substantial evidence.  (Id.)  Commerce contends that Plaintiffs are mistaken in

believing that the presence of Annexures V and XIV to the Consolidated Balance Sheet

on the record solves the incompleteness problem, since the items Commerce found to be

missing were Annexures V and XIV to a different document (the Consolidated Profit

and Loss Account for the Year Ending 31 03 07), and remain unaddressed by Plaintiffs.

(Def.'s 56.2 Opp. at 13.)  Commerce also contends that its "well founded concerns . . .

about the reliability and integrity of Deepak's financial statement" are not addressed

"just because the omitted information could potentially be gleaned from another

source."  Vulcan did not comment on the completeness of Deepak's financial statement.

    2.   <u>Analysis</u>

    The antidumping statute requires that, when establishing the normal value of

merchandise in a nonmarket economy ("NME"), Commerce "shall determine the

normal value of the subject merchandise on the basis of the values of the factors of

production utilized in producing the merchandise and to which shall be added an

amount for general expenses and profit plus the cost of containers, coverings, and other

expenses."  19 U.S.C. § 1677b(c)(1).  The statute restricts the manner in which the factors

may be valued by stating that "the valuation . . . shall be based on the best available

information regarding the value of such factors in a market economy country or

countries considered to be appropriate" by Commerce (in this instance, India).  <u>Id.</u>  The

factors of production include, "but are not limited to    (A) hours of labor required, (B)

quantities of raw materials employed, (C) amounts of energy and other utilities

consumed, and (D) representative capital cost, including depreciation."  § 1677b(c)(3).

Commerce has promulgated 19 C.F.R. § 351.408, a regulation further elaborating

on the manner in which normal value for an NME is calculated from factors of

production in a surrogate market economy country.  That regulation specifies that "[f]or

manufacturing overhead, general expenses, and profit, the Secretary normally will use

non proprietary information gathered from producers of identical or comparable

merchandise in the surrogate country."  § 351.408(c)(4).

Commerce has also articulated the policy by which it applies the statute and

regulation in particular investigations.  The Department's policy is guided by the

conference report issued by the Congressional committee charged with reconciling the

House and Senate versions of the Omnibus Trade and Competitiveness Act of 1988,

which stated, in regard to calculating normal value by the factors of production method,

that "Commerce shall avoid using any prices which it has reason to believe or suspect

may be . . . subsidized prices. . . .  [We] do not intend for Commerce to conduct a formal

investigation to ensure that such prices are not . . . subsidized, but rather intend that

Commerce base its decision on information generally available to it at that time."

Omnibus Trade and Competitiveness Act of 1988, H.R. REP. NO. 100 576, at 59, (1988)

(Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 1547, 1623 24.[3]  In accordance with this

statement of legislative intent, Commerce's established practice is "to disregard

financial statements where we have reason to suspect that the company has received

actionable subsidies, and where there is other usable data on the record."  (IDM at 8

(citing Issues and Decision Mem. for the Antidumping Inv. of Certain New Pneumatic

Off the Road Tires from the People's Rep. of China (Jul. 7, 2008), available at

http://ia.ita.doc.gov/frn/summary/PRC/E8 16156 1.pdf, at 37 ("OTR Tires IDM") (last

visited Nov. 15, 2010), incorporated into Certain New Pneumatic Off The Road Tires

from the People's Republic of China: Final Affirmative Determination of Sales at Less

Than Fair Value and Partial Affirmative Determination of Critical Circumstances, 73

Fed. Reg. 40,485, 40,486 (Jul. 15, 2008)).)

Plaintiffs argue that § 1677b(c)(1) means that Commerce, in selecting the "best

available information," must prioritize data regarding identical merchandise over data

pertaining to merely comparable merchandise.  Plaintiffs' interpretation is supported

solely by citation to the CVB 23 IDM.  A reading of the CVB 23 IDM, however, reveals

that Plaintiffs misinterpret that evidence of agency practice.  Contrary to Plaintiffs'

interpretation, the CVB 23 IDM expressed the Department's preference for data

---

[3] The report also states, "[i]n addition, Commerce should seek to use, if possible, data based on production of the same general class or kind of merchandise using similar levels of technology and at similar levels of volume as the producers subject to investigation."  Id.

regarding either identical <u>or</u> comparable merchandise versus Reserve Bank of India

data aggregating financial ratios of many hundreds of producers of all manner of

merchandise.  <u>See</u> <u>CVB 23 IDM</u> at 3 8.  While isolated quotes from the <u>CVB 23 IDM</u>

appear to express a preference solely for data regarding identical merchandise,[4] read in

context it is clear that those quotations merely elide the "or comparable" phrase of

"identical or comparable," and that the <u>CVB 23 IDM</u> does not adopt a preference for

data from identical merchandise over data from comparable merchandise.  <u>Id.</u>

    The Court has found no support for any preference between identical versus

comparable merchandise.  The statute does not speak to this distinction.  <u>See</u> 19 U.S.C.

§ 1677b(c).  Commerce's regulation does not forbid treatment of identical and

comparable merchandise as equivalent.  <u>See</u> 19 C.F.R. § 351.408(c)(4) ("[T]he Secretary

normally will use non proprietary information gathered from producers of identical or

comparable merchandise").  Commerce's stated practice is to exclude "financial

statements where there is evidence that the company received countervailable subsidies

and there are other sufficient reliable and representative data on the record";[5] when

---

[4] <u>See</u> <u>CVB 23 IDM</u> at 7 ("[T]he Department's preference is to use, where possible, the financial data of surrogate producers of identical merchandise, provided that the surrogate value data are not distorted or otherwise unreliable.").

[5] <u>Certain Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the People's Rep. of China: Issues and Decision Mem. for the Final Determination</u>, (Sept. 10, 2010), <u>available at</u> http://ia.ita.doc.gov/frn/summary/PRC/2010 23549 1.pdf at 35 ("<u>Seamless Pipe IDM</u>") (last visited Nov. 15, 2010), <u>incorporated into</u> <u>Certain</u>

determining whether there are other sufficient reliable and representative data on the

record, Commerce appears to treat data regarding identical and comparable

merchandise as equally adequate alternatives to data reflecting subsidies.[6]

The Court of Appeals for the Federal Circuit ("CAFC") has recently stated that

the requirement in § 1677b(c)(1) that Commerce use the best available information "is

ambiguous," Dorbest Ltd. v. United States, 604 F.3d 1363, 1373 (Fed. Cir. 2010), and

Commerce has broad discretion to determine which information is the best available,

Nation Ford Chem. Co. v. United States, 166 F.3d 1373, 1377 (Fed. Cir. 1999) (citing

cases).  Bearing this in mind, the Court concludes that Commerce's consistent practices

of rejecting financial statements that suggest subsidies and treating financial statements

regarding identical and comparable merchandise as equally acceptable alternatives are

reasonable interpretations of the statutory mandate to use the best available

information.  For this reason, the Court finds that Commerce acted within its discretion

---

Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from the People's
Rep. of China: Final Determination of Sales at Less Than Fair Value and Critical
Circumstances, in Part, 75 Fed. Reg. 57,449, 57,450 (Sept. 21, 2010).

[6] See Seamless Pipe IDM at Cmt. 6; Issues and Decision Mem. for the
Antidumping Duty Investigation of Certain Oil Country Tubular Goods from the
People's Rep. of China (Apr. 8, 2010), available at http://ia.ita.doc.gov/frn/summary/
PRC/2010 8994 1.pdf, at 81 ("OCTG IDM") (last visited Nov. 15, 2010), incorporated into
Certain Oil Country Tubular Goods from the People's Rep. of China, 75 Fed. Reg. 20,335
(Apr. 19, 2010) (noting that the three companies whose financial statements were under
consideration "each produce merchandise that is identical and/or comparable to the
subject merchandise.").

in excluding the Deepak financial statement due to the possibility that Deepak received

actionable subsidies, and that Commerce reasonably used financial statements from

manufacturers of comparable merchandise instead.  The Court therefore upholds this

aspect of the <u>Final Determination</u>.[7]

### B.    Lakshmi and Sterling

In the <u>Final Determination</u>, Commerce determined that the financial statements

of Lakshmi and Sterling were among the best available information, and used them in

valuing Plaintiffs' factors of production.

### 1.    Contentions of the Parties

Plaintiffs claim that Commerce should have rejected the financial statements of

Lakshmi and Sterling.  The first prong of this argument is easily disposed of because it

hinges on the prior argument regarding Deepak:  Plaintiffs contend that Deepak's data,

uncontestedly from the only producer of identical merchandise in the record, was better

than the data from Lakshmi and Sterling, which only produced arguably comparable

merchandise.  This argument is unavailing, since the Court has already held that

Commerce acted within its discretion in determining not to use the Deepak data due to

the possibility that it reflected subsidies.  It is also unavailing because, as discussed

---

[7] Having concluded that Commerce permissibly excluded the Deepak financial
statement due to subsidies, the Court need not reach the question of whether Deepak's
financial statement was incomplete.

above, Commerce's practice of treating data regarding identical and comparable

merchandise is reasonable.

The second prong of Plaintiffs' argument is that Lakshmi and Sterling

manufacture high tensile automotive fasteners ("HTAF"), a product that Plaintiffs

contend is not even comparable to STR.  Comparability is not defined in the

antidumping statute or the regulation.  Commerce's typical practice in analyzing

comparability is to consider the similarities in production, end uses, and physical

characteristics between two products.  (Pls.' 56.2 Mem. at 16 (citation omitted).)

Plaintiffs claim that Commerce did not analyze the factors in this case.  (Id. at 17.)  If it

had, Plaintiffs assert, evidence on the record would have shown that HTAFs are

custom made in small batches, "must meet very strict specifications for strength,

reliability and structure" to withstand "high stress critical applications," and thus have

"a significantly more advanced and costly manufacturing process" resulting in factory

overhead ratios more than ten times that of STR.  (Id. at 17 21.)  The Brother Companies

claim that this evidence was not rebutted at the administrative level and argue that, as a

result, the Final Determination is unsupported by substantial evidence on the record.

(Id. at 21.)

The United States and Vulcan counter that, given that Deepak's financial

statements were properly rejected due to subsidy, the Lakshmi and Sterling financial

statements were the best available information.  Commerce contends that it considered

the differences and similarities between HTAF and STR and determined that they were

comparable because they were both fasteners, and were made using "similar raw

materials and production processes."  (Def.'s 56.2 Opp. at 20.)  Commerce did not

ignore the evidence regarding differences between the products, but concluded that

HTAF are comparable to STR, "albeit more specialized."  (Id. at 21.)  Commerce

therefore exercised its discretion to "choose among imperfect alternatives."  (Id.

(internal quotation omitted.))

　　　　With regard to Commerce's decision to use Lakshmi's financial statement,

Plaintiffs also contend that Commerce acted arbitrarily and capriciously because it

rejected Deepak's financial statements due to a subsidy on the one hand, while

accepting Lakshmi's financial statements despite record evidence that Lakshmi received

a subsidy on the other hand.  (Pls.' 56.2 Mem. at 22 23.)  The United States and Vulcan

contend that this last issue is not properly before the Court because the Brother

Companies failed to raise it in the administrative proceedings and Plaintiffs thus failed

to exhaust their administrative remedies.  (Def.'s 56.2 Opp. at 21 23; Def. Int.'s 56.2 Opp.

at 18 21.)

　　　　2.　　Analysis

The statute, 19 U.S.C. § 1677b(c), and the regulation, 19 C.F.R. § 351.408(c)(4), do

not define the term "comparable."  Commerce's practice in determining whether two

products are comparable is "to apply a three prong test that considers: (1) physical

characteristics; (2) end  uses [sic], and (3) production processes."  Seamless Pipe IDM at

33.  These factors were not ignored by Commerce in the IDM as alleged by Plaintiffs.

Commerce, in finding that Lakshmi and Sterling "are producers of merchandise

comparable to the subject STR," noted the "affidavits provided by the [Plaintiffs] . . .

discussing the difference between high tensile fasteners and the STR produced by

[Plaintiffs]."  IDM at 11.  Contrary to Defendant's argument that Commerce found

HTAF and STR to be made using "similar raw materials and production processes,"

(Def.'s 56.2 Opp. at 20), Commerce actually noted that "[w]hile high tensile fasteners for

the automotive industry may be different than the fasteners produced by [Plaintiffs] in

terms of raw materials and process . . . record evidence demonstrates that both

[Lakshmi] and [Sterling] nevertheless produce steel threaded fasteners, and thus, of the

remaining financial statements, are manufacturers of products that are comparable,

albeit more specialized."  IDM at 11.

It is clear from this analysis that Commerce considered the evidence on the

record that fairly detracted from a finding of comparability, as well as the evidence that

ultimately led Commerce to conclude that HTAF and STR were comparable.

Commerce, noting the differences between the two products, ultimately decided that

both products are "steel threaded fasteners" and thus viewed the two products as more

similar than different.  Id.

After close consideration, the Court finds that Commerce's decision that HTAF

and STR are comparable is supported by substantial evidence in the record and took

adequate notice of the contrary evidence.  Although the Court might not have come to

the same conclusion were the decision for the Court to make, Commerce operates in this

area with a great deal of discretion, which the Court is bound to respect.  Reviewing the

IDM, the Court is convinced that a reasonable decisionmaker could have come to the

same conclusion as Commerce.  The Court therefore upholds the Final Determination to

the extent that it chose to use the financial statements of Lakshmi and Sterling as

producers of comparable merchandise.

As to Plaintiffs' arbitrary and capricious claim against use of Lakshmi's financial

statement, this Court is mandated to, "where appropriate, require the exhaustion of

administrative remedies" in trade cases.  28 U.S.C. § 2637(d).  As the CAFC has

explained, "[a]lthough that statutory injunction is not absolute, it indicates a

congressional intent that, absent a strong contrary reason, the court should insist that

parties exhaust their remedies before the pertinent administrative agencies."  Corus

Staal BV v. United States, 502 F.3d 1370, 1379 (Fed. Cir. 2007).  The Court of

International Trade generally enforces the exhaustion requirement strictly in trade

cases.  Id. (citing cases).  In addition to the statutory admonition that the Court of

International Trade require exhaustion, Commerce by regulation requires that "all

arguments that continue in the submitter's view to be relevant to the . . . final

determination or final results" must be raised in the party's case brief, which is

submitted after the preliminary determination but before the final determination.  19

C.F.R. § 351.309(c)(2).

       In defining the scope of its discretion to entertain unexhausted claims under 28

U.S.C. § 2637(d), the Court has described certain circumstances in which exhaustion will

not be required: where exhaustion would be futile, or inequitable and an insistence of a

useless formality; where a court decision issued after the administrative determination

might have materially affected the agency's actions; where entertaining the issue would

not intrude upon the agency's prerogatives because it is a pure question of law not

requiring further factual development; and where the plaintiff had no reason to suspect

that the agency would refuse to adhere to clearly applicable precedent.  Consol.

Bearings Co. v. United States, 25 CIT 546, 552 53, 166 F. Supp. 2d 580, 586 (2001)

(citations omitted).  Another line of cases indicates that the Court of International Trade

will decide an unexhausted issue on the merits when the party raising the issue had no

opportunity to do so before the agency.  See generally, e.g., Qingdao Taifa Group Co.,

Ltd. v. United States, 33 CIT ___, 637 F. Supp. 2d 1231 (2009).

    None of these exceptions apply to the present case.  Futility does not apply here,

for if Plaintiffs had raised this issue before Commerce below, it is difficult to see how

Commerce would have justified continuing to use Lakshmi's subsidized financial

statement while rejecting Deepak's.  There is no intervening court decision applicable

here.  The issue is not one of pure law, because settling it requires consideration of the

particular facts regarding the two financial statements, not simply the analysis of a

statute using standard tools of statutory construction.  See Consolidated Bearings, 166 F.

Supp. 2d. at 587.  Plaintiffs have not identified some clear judicial precedent that applied

to the issue, nor argued that Plaintiffs failed to raise the argument in the expectation

that Commerce would follow that clear precedent.

    It is true that plaintiffs may raise arguments before the Court of International

Trade that were not raised in a case brief before Commerce "if Commerce did not

address the issue until its final decision," where the result was that the party did "not

have . . . a full and fair opportunity to raise the issue at the administrative level."

Qingdao Taifa Group Co., Ltd. v. United States, 33 CIT ___, 637 F. Supp. 2d 1231, 1236

(2009) (citing LTV Steel Co. v. United States, 21 CIT 838, 868 69, 985 F. Supp. 95, 120

(1997)).  At the core of this issue is Plaintiffs desire to exclude the Lakshmi financial

statement, a position that Plaintiffs previously asserted in their case brief before

Commerce.  (Brief From Law Firm of DeKeiffer Horgan to Sec of Commerce (Jan. 16,

2009), PR 176, at 15 17).  At that time, Plaintiffs had every reason to raise the issue of

Lakshmi's receipt of subsidies; yet, while raising other challenges to Lakshmi's financial

statement, nowhere in their case brief did Plaintiffs mention Lakshmi's receipt of a

countervailable subsidy.  (See id.)  This failure is all the more striking since Plaintiffs

did, in fact, raise the subsidization issue in arguing for the exclusion of the financial

statements of two other companies, Sarda Energy and Minerals Ltd. and Welspun

Power and Steel Ltd.  (Id. at 19 21, 23.)  Furthermore, Plaintiffs did not raise the

subsidization issue regarding Lakshmi in their rebuttal brief.  (See Brief From Law Firm

of DeKieffer Horgan to Sec of Commerce (Jan. 26, 2009) PR 182, at 15 16.)  Given this

record, the Court finds that Plaintiffs simply failed to use the opportunity of their case

and rebuttal briefs to argue to Commerce that Lakshmi's financial statement should be

excluded due to Lakshmi's receipt of countervailable subsidies.  Because Commerce

never had the opportunity to decide the issue in its administrative proceedings, the

Court will not entertain this unexhausted question.

> C.      **Mangal**

In the Final Determination, Commerce determined that Mangal had received a

countervailable subsidy and thus rejected its financial statement when valuing

Plaintiffs' factors of production.

      1.     <u>Contentions of the Parties</u>

Plaintiffs contend that Commerce erred when it rejected the financial statement of Mangal upon finding that Mangal received countervailable subsidies.  (Pls.' 56.2 Mot. at 23 24.)  The Brother Companies argue that the subsidies received by Mangal comprised only 3% of the company's gross global sales revenue, and therefore "were the United States to investigate Mangal Steel, sales of subject merchandise <u>to the United States</u> might well be at a <u>de minimis</u> (2% or less) level of subsidization; [sic] hence not countervailable at all."  (<u>Id.</u> at 23 24 (emphasis in original).)  Defendant reiterates that receipt of the DEPB subsidy, regardless of the amount of that subsidy, is a sufficient basis for Commerce to reject the company's financial statements, and argues that the amount of the subsidy is irrelevant to the legal standard governing this decision.  (Def.'s 56.2 Opp. at 15 16.)  Defendant Intervenor agrees with Defendant, and points out that Plaintiffs have, with this argument, conceded that Mangal received subsidies.  (Def. Int.'s 56.2 Opp. at 21 25.)

Plaintiffs also claim that "to the extent Mangal's financial statement reflects any subsidies that in fact would be countervailable, this is already adverse to [the Brother Companies] in the ratio calculations because the Department's practice is to <u>offset</u> revenue from subsidies against G&A expense."  (Pls.' 56.2 Mot. at 24 (emphasis in

original).)  In response, Defendant asserts that the offsetting of subsidy revenue against

G&A expenses is irrelevant to the determination of what constitutes the best available

information when calculating the factors of production.  (Def.'s 56.2 Opp. at 15.)

Defendant Intervenor objects that Plaintiffs' proposal is contrary to Commerce's

practice, unprecedented, and would be impossible to realize in a non market economy.

(Def. Int.'s 56.2 Opp. at 24 25.)

        Plaintiffs final argument related to the financial statement of Mangal is that

Commerce erred because, regardless of subsidy, Mangal's financial statement was still

the "best available information," given that Mangal produced merchandise identical to

that produced by the Brother Companies, and given that Mangal had the same level of

production experience as the Brother Companies.  (Pls.' 56.2 Mot. at 25 26.)

        2.      <u>Analysis</u>

        As explained regarding Deepak, Commerce acted permissibly in rejecting

Mangal's financial statement due to evidence that Mangal may have received a

countervailable subsidy.  Plaintiffs' argument that the subsidy Mangal received "might

well" not be countervailable were Mangal investigated is beside the point.  Commerce

need not turn the search for suitable proxy financial statements into a full blown

countervailing duty investigation before it may reject a financial statement that

indicates that the company may have received subsidies.  And Commerce does not err

in rejecting such a financial statement where an interested party offers mere speculation

that the subsidy "might well" be at a <u>de minimis</u> level were a countervailing duty

investigation conducted.  Plaintiffs cite no authority to support their confused claim that

Mangal's receipt of a subsidy already counts against it; and, as discussed above in

relation to Deepak, Commerce did not err in choosing statements from manufacturers

of comparable merchandise over Mangal, which manufactured identical merchandise.

The Court therefore affirms the <u>Final Determination</u> in regard to Mangal.

      **D.**     **Rajratan**

           1.    <u>Contentions of the Parties</u>

Plaintiffs contest Commerce's decision to reject the financial statement of

Rajratan.  (Pls.' 56.2 Mem. at 27 29.)  As to Rajratan, Commerce stated in the <u>IDM</u> that

"the Department agrees with [Vulcan] that the financial statements of companies that

produce inputs   which are consumed in manufacturing the subject merchandise

would not capture the downstream costs of producing STR."  <u>IDM</u> at 9.  But Vulcan

never argued before the agency that Rajratan's product was an input to STR (<u>See</u>

<u>generally</u> <u>Brief From Law Firm of Vorys Sater to Sec of Commerce</u> (Jan. 16, 2009), PR

178 ("<u>Vulcan Case Brief</u>"; <u>see</u> <u>Brief From Law Firm of Vorys Sater to Sec of Commerce</u>

(Jan. 23, 2009), PR 181 ("<u>Vulcan Rebuttal Brief</u>") at 7 9).  Without explicitly saying that

Rajratan produced an input to STR, Commerce appears to have found so as a basis for

rejecting Rajratan's financial statement.  See IDM at 9 10 (stating that "[w]ire rod is a

general production material input that often involves value added further

manufacturing in order to produce a finished (or semi finished) steel product, including

STR, and is thus less comparable to STR than companies that produce finished steel

product . . . [t]herefore . . . the Department finds that the 07/08 Rajratan Global . . .

financial statements are not appropriate sources for the surrogate financial ratios").

This is also the position Defendant argues in its brief before the Court.  (Def.'s 56.2 Opp.

at 16 ("Commerce excluded Rajratan's financial statement . . . because Rajratan

produces wire rod, an input consumed in the manufacturing of the subject

merchandise" (citing IDM at 9)).)

Plaintiffs contend that Commerce erred because Rajratan's financial statement

shows that it does not manufacture Plaintiffs' input, steel rod, but rather manufactures

"p.c. [prestressed concrete] wire" and "tyre bead wire."  (Pls.' 56.2 Mem. at 27; Pls.'

Reply Mem. at 13 14.)  Rajratan's financial statement in the administrative record

confirms that the company produces "P.C. Wire" and "Tyre Bead Wire."  (Letter

w/attachment(s) from Law Firm of deKieffer & Horgan to Sec of Commerce Jiaxing

Brother Surrogate Data, (Dec. 12, 2008), PR 165 at Ex. 3, p. 27.)  Plaintiffs argue that,

contrary to the findings in the IDM, both Rajratan and the Brother Companies use the

same input, steel rod, as an input in the manufacture of simple downstream products.

(Pls.' 56.2 Mem. at 27; Pls.' Reply Mem. at 13 14.)

Vulcan does not challenge Plaintiffs on this question.  As mentioned above,

Vulcan did not argue in its case brief before Commerce that Rajratan produced an input

to STR, but rather that "[a] wire company will not have the same manufacturing costs as

a producer of steel threaded rod or other fasteners."  (Vulcan Rebuttal Brief at 8.)

Vulcan concedes here that the Brother Companies and Rajratan use the same input.

(Def. Int.'s 56.2 Opp. at 26 ("The primary input for the production of steel wire is wire

rod   the same input that is used for the production of steel threaded rod.").)  Vulcan

then makes the same arguments to the Court that it made to the agency:  that although

Plaintiffs begin the STR manufacturing process by drawing steel rod inputs, as do steel

wire manufacturers such as Rajratan, Plaintiffs then perform additional processing on

the drawn rod which makes STR incomparable to the steel wire manufactured by

Rajratan.  (Id.)

        2.      Analysis

Commerce's rejection of Rajratan's financial statement was based on the

mistaken finding that Rajratan manufactured an upstream product used as an input in

the production of STR.  This finding is not supported by substantial evidence on the

record, which shows that Rajratan produces p.c. wire and tyre bead wire, not steel rod.

Defendant points to nothing in the record indicating that Rajratan manufactures steel

rod; and Vulcan concedes that Rajratan <u>does not</u> produce steel rod.  The record is

utterly devoid of any evidence that Rajratan does so.  Commerce, having mistakenly

concluded that Rajratan's product was an input used in Plaintiffs' STR manufacture,

rejected Rajratan's financial statement for that reason.  The Court thus finds that

Commerce's decision to reject Rajratan's financial statement is not supported by

substantial evidence on the record.  This aspect of the <u>Final Determination</u> is therefore

remanded to Commerce.  Commerce is directed, on remand, to reconsider the

appropriateness of using Rajratan's financial statement by analyzing the comparability

of Rajratan's merchandise to the subject merchandise.

      **E.    Visakha Wire Ropes Ltd.**

          1.    <u>Contentions of the Parties</u>

      As for Visakha Wire Ropes Ltd. ("Visakha"), Plaintiffs state that Commerce "did

not articulate a factual basis for its decision or any other reason," (Pls.' 56.2 Mem. at 27

28), apart from "baldly assert[ing] that wire rope is not 'comparable' to subject

merchandise" (Pls.' 56.2 Reply at 14).  Plaintiffs therefore argue that the decision is

"defective and must be remanded for a proper explanation of the Department's

reasoning based on record evidence."  (Pls.' 56.2 Mem. at 28.)

      Commerce's articulated rationale for rejecting the Visakha financial statement

was that "the Department agrees with [Vulcan] that the company does not appear to

manufacture products comparable to STR." (IDM at 9 10.)[8]  That appears to be the

extent of the analysis relating to Visakha in the IDM.

   Defendant, in its brief, quotes Commerce's IDM summary of Vulcan's position in

summarizing Commerce's findings.  (Def.'s 56.2 Opp. at 17 18.)  According to

Defendant, "[t]hrough adoption of Vulcan's unrebutted positions backed by record

evidence, Commerce indicated a reasonable and discernible basis for its decision."  (Id.

at 18 (citing NMB Sing. Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009) for the

proposition that the explanation for how Commerce reached its decision need only be

reasonably discernable, not perfect.)  Vulcan argues that Visakha manufactures wire

rope by "stranding or braiding multiple steel wires together" and that "there is no

indication in the company's financial statement   or anywhere else in the record   that

[Visakha] produces steel threaded rod or any other type of steel fastener." (Def. Int.'s

56.2 Opp. at 28.)  Contending that "[t]here are no similarities between" the processing

used to make steel rope and that used to make STR, Vulcan asserts that Commerce

correctly rejected Visakha's financial statement.  (Id.)

---

   [8] Earlier in the IDM, Commerce summarized Vulcan's position   the argument
with which Commerce purports to agree in deciding to reject Visakha's financial
statement   in these words:  "that the company is a producer of steel wire rope, which is
a downstream product made from steel wire, but has an entirely different production
process from STR" and that "the manufacturing process is wholly dissimilar, and not
comparable to STR."  IDM at 3.

      2.    <u>Analysis</u>

Although the <u>IDM</u> does not present Commerce's reasoning in the most lucid

terms, it does indicate that Commerce accepts Vulcan's position in rejecting Visakha's

financial statement.  In doing so, Commerce implicitly indicates that it finds that wire

rope is not a comparable product to the subject merchandise due to the differences in

production process.  Given that Commerce, in making such decisions, operates within a

wide area of discretion, and given that Commerce referenced the record and Vulcan's

arguments from the record in articulating its decision, the Court finds that Commerce's

decision is based on substantial evidence.  Plaintiffs' motion is therefore denied with

regard to the rejection of Visakha's financial statement.

### IV. CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** that Plaintiffs' motion is granted in part, and this case is remanded to

Commerce, which is directed to reconsider the appropriateness of using Rajratan's

financial statement by analyzing the comparability of Rajratan's merchandise to the

subject merchandise; and it is hereby

**ORDERED** that Commerce file with the Court a remand redetermination that is

consistent with this opinion by December 16, 2010, that Plaintiffs file any comments on

the remand redetermination by January 6, 2011, that Defendant and Defendant

Intervenor file any responses to Plaintiffs' comments by January 20, 2011, and that

Plaintiffs' comments, and the responses of Defendant and Defendant Intervenor, shall

not exceed 15 pages in length; and it is further

      **ORDERED** that Plaintiffs' motion is denied in all other respects.


                                  /s/Gregory W. Carman
                                  Gregory W. Carman, Judge

Dated:       November 16, 2010
               New York, NY